UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GLENN D. McLERNON,          )<br>    Plaintiff,                          )<br>                                                   )<br>vs.                                              )<br>                                                   )<br>ILLINOIS DEPARTMENT OF  )<br>TRANSPORTATION, a           )<br>DEPARTMENT OF THE STATE )<br>OF ILLINOIS,                          )<br>    Defendant.                        ) | Civil Action<br>File Number 3:10-CV-00329-WDS-CJP |

## **COMPLAINT**

Plaintiff, Glenn D. McLernon, by and through his attorneys, Gilbert, Huffman, Prosser, Hewson & Barke, Ltd., brings this action against the Illinois Department of Transportation, a Department of the State of Illinois, seeking preliminary and permanent injunction and related relief barring unlawful discrimination under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101.

Parties

1.  Plaintiff, Glenn D. McLernon, is a citizen of Illinois with his residence and domicile in the City of Murphysboro, County of Jackson, State of Illinois.

2.  Defendant Illinois Department of Transportation is a department of the State of Illinois responsible for the construction of roads and highways.

Jurisdiction

3.  This action arises under the laws of the United States, specifically the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (hereafter "ADA").

4.  This Court has jurisdiction over this action pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 1000e-5 and pursuant to 28 U.S.C. § § 1331 and 1343.

5. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with.

6. A timely charge of employment discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") and notification by the EEOC to the plaintiff of a right to sue was issued on February 2, 2010. This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's notification of right to sue.

### Venue

7. The claims made in this action arose within this judicial district.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

### Facts

9. The plaintiff began employment in January of 1985 as District 9 Landscape Architect for the defendant, Illinois Department of Transportation.

10. Through out most of the Plaintiff's employment with the defendant, plaintiff's assignment and duties related to environmental and landscape design work on Illinois Department of Transportation highway and related construction projects in the Illinois counties of Alexander, Franklin, Gallatin, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Saline, Union, and Williamson.

11. At all times relevant to this complaint, Plaintiff competently performed his job duties and assignments.

12. In early 2006 the plaintiff began to experience anxiety, depression and symptoms of obsessive compulsive disorder which conditions affected the plaintiff's

sleeping, his ability to think and communicate, interfered with the plaintiff's ability to manage work and interfered with the plaintiff's ability to appropriately relate to others in and outside the workplace.

13. In 2006 and thereafter the plaintiff sought medical treatment for his disabling mental conditions and he attempted to cope with his mental health conditions through the use of medications, and when necessary, to seek and take short term sick leave from the stress and demands of his employment.

14. In July of 2006, the plaintiff was assigned three additional counties to provide landscape architectural services for the Department. The assignment of the departmental landscape architectural duties for the Illinois counties of Hamilton, White and Jefferson Counties, in addition to plaintiff's continued departmental responsibilities for the Illinois counties of Alexander, Franklin, Gallatin, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Saline, Union, and Williamson, increased plaintiff's job responsibilities and workload, exacerbated the plaintiff's mental health problems and caused the plaintiff to inform his supervisor that he was having mental health problems. After the expansion of the plaintiff's area of responsibility and workload, the plaintiff periodically requested sick time in order to cope with his mental health condition and problems.

15. In early 2007, the plaintiff began to experience heightened and more severe anxiety and obsessive behavior and, in response to plaintiff's more severe conditions, plaintiff requested and received additional brief periods of sick leave to deal with the mental health issues in the months of January, February and March of 2007.

3

16. In early March, 2007, plaintiff's supervisor, Larry Piche, criticized the plaintiff for taking sick leave time off from work. Although criticized by his supervisor, plaintiff's use of sick time in the first months of 2007 had not exceeded the plaintiff's accrued sick leave provided by the employer and plaintiff had been able to complete or keep current on his assigned duties despite the episodes of plaintiff's use of sick time off from work.

17. On March 8, 2007, plaintiff submitted a Medical Certification for Family Medical Leave Act to plaintiff's supervisor, Larry Piche, documenting the plaintiff's mental health condition and requesting the employer's accommodation for his mental health condition, specifically a reduction in the plaintiff's workload and the employer's recognition of the plaintiff's need to take sick leave intermittently as needed by plaintiff to address his mental health condition.

18. On March 9, 2007, the plaintiff's supervisor, Larry Piche, placed the plaintiff on "Sick Leave Proof Status" which required plaintiff to provide medical documentation for requested sick leave. The plaintiff perceived this action as punitive and retaliatory to the plaintiff's request for Family and Medical Leave Act time off.

19. In mid-March of 2007, the plaintiff's supervisor, Larry Piche, placed plaintiff on administrative leave and ordered the plaintiff to submit to examination by a physician employed by the employer to evaluate the plaintiff's mental condition.

20. On April 4, 2007, Larry Piche drove the plaintiff to be examined by the Department's selected physician. In the course of the travel to the examination of plaintiff, Piche expressed doubt as to the legitimacy of the plaintiff's mental health condition. Contrary to the defendant's supervisor's expression of suspicion, the

defendant's independent examining physician diagnosed plaintiff as having a "behavioral disorder" and recommended that the plaintiff be enrolled in the Department's Employee Assistance Program, with the plaintiff to receive appropriate workplace accommodation and with the recommendation that the plaintiff continue his care with his personal physician.

21. Plaintiff immediately enrolled in the Department's Employee Assistance Program and requested the Department to make reasonable accommodation of the plaintiff's job assignment to accommodate the plaintiff's mental health needs and condition. One meeting was scheduled with the plaintiff and the defendant's Employee Assistance Program. No accommodation was provided as a consequence of the defendant's Employee Assistance Program and the Department failed to further consider the plaintiff's mental condition after the Department's single Employee Assistance Program meeting with the plaintiff.

22. That in November of 2007, the plaintiff was notified by the Department that it intended to charge him with insubordination/unprofessional conduct. The alleged misconduct involved interactions between the plaintiff and another employee against whom the plaintiff had complained to his supervisor, Larry Piche, of offensive sexual harassment earlier in the year. Despite the plaintiff's complaint to Larry Piche, neither Larry Piche nor any one in the Department undertook any action of investigation or discipline into the alleged harassment reported by the plaintiff.

23. On December 4, 2007, the plaintiff's supervisor ordered the plaintiff to turn in the keys to the Department vehicle which had been assigned to the plaintiff for the plaintiff's use for the preceding 22 years of the plaintiff's employment. No explanation

was provided to the plaintiff for the action terminating the plaintiff's use of the department vehicle and the plaintiff viewed the action as harassing and retaliatory to the plaintiff's prior complaint of sexual harassment and punishment for the plaintiff's mental condition.

24. That on December 5, 2007, upon attending a pre-disciplinary hearing on charges of employee misconduct, the plaintiff reviewed the statements of Larry Piche and Piche's supervisor, Kevin Grammer, and informed the Department in writing that "[a]fter reading all of the statements against me I realize that I am mentally unstable and need to take sick leave in accordance with FMLA until which time I am fit for duty, if ever." The Department's response to this FMLA request was to require the plaintiff to submit medical certification supporting the request and to direct the plaintiff not to come into the office or to perform work without prior approval of his supervisors, Larry Piche or Kevin Grammer.

25. That on the plaintiff's December 14, 2007, delivery to Kevin Grammer of the requested documentation supporting the plaintiff's FMLA leave request, Kevin Grammer handed plaintiff a notice of suspension and directed the plaintiff to return to work on January 7, 2008. At the December 14, 2007 conference between the plaintiff and Kevin Grammer, plaintiff was informed that if plaintiff failed to return to work on January 7, 2008 as ordered, plaintiff would face further disciplinary action, including discharge. The order to return to work on January 7, 2008, did not address the effect of the plaintiff's request for time off pursuant to the Family Medical Leave Act.

26. That the plaintiff returned to work on January 7, 2008 as directed and the plaintiff was given another notice of a pre-disciplinary meeting and plaintiff was told by

his supervisor, Larry Piche, that the plaintiff would be "better off" resigning from his employment rather than be discharged.

27. The defendant's response to the plaintiff's requests for reasonable accommodation was to deny the plaintiff reasonable accommodation, deny the plaintiff reasonable time off from work to address the plaintiff's emotional and mental health needs, and to harass the plaintiff with unwarranted disciplinary charges and to threaten plaintiff that, unless plaintiff resigned and quit his employment, additional disciplinary charges would be pursued against plaintiff leading to plaintiff's discharge.

28. That the defendant and its agents knew or should have known that, given the plaintiff's vulnerable emotional state and impaired mental health, the defendant's harassment of the plaintiff created a hostile workplace environment for the plaintiff which was intolerable to the plaintiff and the defendant's actions constituted a constructive discharge of the plaintiff from his employment.

29. That as a consequence of the hostile work environment created by the defendant's harassment of the plaintiff and the defendant's notification to the plaintiff that he would be "better off " to resign rather than be terminated, the plaintiff was distressed and resigned his employment on January 7, 2008, effective January 15, 2008.

Cause of Action

Violation of the Americans with Disabilities Act

30. Plaintiff incorporates by reference paragraphs 1 through 29, inclusive, as if set forth at length.

31. From January of 2007, Plaintiff was and remains an individual with a "disability" within the meaning of § 3(2) of the ADA, 42 U.S.C. § 12102(2). More particularly, plaintiff is a person who

    (A.) suffers from anxiety, depression, obsessive compulsive disorder and impairing mental health conditions which substantially limits one or more major life activities of the plaintiff (including sleeping, concentrating, thinking, communicating and working);

    (B.) has a record of such an impairment; and

    (C.) is regarded by the defendant as having such impairment.

32. Plaintiff is a "qualified individual with a disability" as the term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, plaintiff is an individual with a disability who, with reasonable accommodation, including adoption of a reasonable work-load and the opportunity to have intermittent sick leave time, can perform the essential job functions of the position of Landscape Architect.

33. The Illinois Department of Transportation is an employer within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111.

34. Despite plaintiff's request, the defendant has refused to make reasonable accommodation to plaintiff modifying his workload assignment and the defendant has refused to permit plaintiff time off from work as plaintiff's conditions require.

35. Defendant has harassed the plaintiff by requiring plaintiff to produce medical documentation to support his need for sick leave, by denying plaintiff rights to the Family Medical Leave Act to which the plaintiff is entitled; by initiating disciplinary charges for conduct which is the consequence of the plaintiff's mental health condition

and in retaliation of the plaintiff seeking leave to address his mental health needs; and by threatening plaintiff with discharge rendering plaintiff's continued employment intolerable by plaintiff.

36. Defendant violated the ADA by discriminating against the plaintiff on the basis of his disability in his employment.

WHEREFORE, plaintiff Glenn D. McLernon respectfully requests this Court to grant the following relief:

(1) Find and hold that Plaintiff has suffered from Defendant's acts of discrimination on the basis of disability;

(2) Order that Plaintiff be awarded the back pay he would have earned, with related monetary benefits and interest thereon, had the Plaintiff not been constructively discharged effective January 14, 2008;

(3) Order the Plaintiff be reinstated to his position as a Landscape Architect and that Defendant be ordered to reasonably accommodate Plaintiff by reducing the workload expectations of the position in a reasonable and appropriate amount and allowing the Plaintiff reasonable sick leave as may be required by his condition;

(4) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(5) Enjoin the State of Illinois Department of Transportation from any further prohibited discrimination against Plaintiff;

(6) Award Plaintiff his attorney fees, including litigation expenses, and the costs of this action; and

      (7)    Grant such other and further relief as may be just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY.

Dated:  April 30, 2010.

                                              Gilbert, Huffman, Prosser, Hewson & Barke, Ltd.

                                              s/Don E. Prosser
                                              Don E. Prosser
                                              Gilbert, Huffman, Prosser, Hewson & Barke, Ltd.
                                              102 S. Orchard Drive
                                              Carbondale, IL  62901
                                              618-457-3547


Gilbert, Huffman, Prosser, Hewson & Barke, Ltd.
Attorneys at Law
102 S. Orchard Drive
P.O. Box 1060
Carbondale, IL  62901
  TEL   (618) 457-3547
  FAX   (618) 457-8017
attorneys@southernillinoislaw.com